# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 97992, 97993, and 97994**

---

# IN RE: S.H., ET AL.

# Minor Children

# [APPEAL BY MOTHER, M.H.]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 10907412

**BEFORE:**  Rocco, J., Boyle, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**  September 6, 2012

[Cite as *In re S.H.*, 2012-Ohio-4064.]

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Buiding
Cleveland, OH 44103-1125


**ATTORNEYS FOR APPELLEE**

Yvonne C. Billingsley
Chief Prosecuting Attorney
Cuyahoga County Department of Children
and Family Services
3955 Euclid Avenue - Room 305E
Cleveland, OH 44115

BY:   Gregory S. Millas
Assistant Prosecuting Attorney
8111 Quincy Avenue - Room 444
Cleveland, OH 44104

KENNETH A. ROCCO, J.:

{¶1} Appellant-mother M.H. appeals from three juvenile division orders that have been consolidated for appeal; each granted permanent custody of her children to the Cuyahoga County Department of Children and Family Services (the "agency"). As required by App.R. 11.1(D), this court has expedited the hearing and disposition of these appeals.

{¶2} M.H. presents four assignments of error. She asserts that the juvenile court permitted the introduction of improper evidence at the dispositional hearing, i.e., hearsay, expert opinion by a non-expert witness, and unsworn testimony. She further asserts that the awards of permanent custody of her children to the agency were against the "manifest weight" of the evidence.

{¶3} Upon a review of the record, this court cannot find any reversible error occurred in the proceedings below. Moreover, because the juvenile court's decisions are supported by the "manifest weight" of clear and convincing evidence, they are affirmed.

{¶4} With respect to M.H.'s two elder daughters, S.H.[1] and A.Y.,[2] the agency's complaints were filed in April 2010. The agency sought temporary

---

[1]D.O.B. November 10, 2009, App. No. 97992.

[2]D.O.B. January 17, 2006, App. No. 97993.

custody of the girls, alleging they were dependent based upon M.H.'s "anger management" and psychological problems, because M.H. was noncompliant with her prescribed psychiatric medication. In June 2010, following an adjudicatory hearing, the juvenile court determined the girls were dependent.

{¶5} The juvenile court conducted the dispositional hearing on July 15, 2010. Mildred Worthy, the social worker assigned to the case, testified that, although M.H. had been mainly compliant with the case plan, she had discontinued her medication. Worthy stated that M.H. "functioned much better" as a parent while on her medication; without it M.H.'s behavior was argumentative, combative, loud, and unfocused on the children.

{¶6} M.H. also testified at the hearing. During cross-examination, M.H. stated that she learned in the parenting class "how to discipline [children] the right way, not to smack them." She further testified that she took a psychological examination, and "was told that [she] was fine, that [she] did not need [further] recommendations" for treatment of mental illness.

{¶7} After she was reminded otherwise, M.H. indicated that she was seeing a psychologist, but could not pay for the prescribed psychiatric medication. She also indicated, on the other hand, that she took the medication but that she was not disposed to continue to do so while she was pregnant.

{¶8} The juvenile court eventually decided to place the girls into the agency's temporary custody. At the conclusion of the hearing, the court observed on the record that M.H. was "contentious with everybody." The court further commented that, "For a mother who claims she has done her anger management and that she is taking her medication as prescribed and she's doing her counseling, she's still doing an awful lot of arguing." The court stated, "She argues with me, she argues with the father, she's arguing with everybody."

{¶9} M.H. gave birth to her third daughter, C.L.,[3] in September 2010. The agency filed a motion for emergency custody of the child because M.H. had "failed to benefit from the parenting classes" she attended, and because she was still in treatment for her anger problems. Worthy testified that M.H. was creating "big scenes" during her visitation with the older girls. The juvenile court granted the agency's motion.

{¶10} In December 2010, the agency sought temporary custody of C.L. At the hearing on the matter, Worthy informed the court that the infant had "special needs"; M.H. admitted she could not yet address the child's needs.[4] After adjudicating C.L. to be a dependent child, the juvenile court granted

---

[3]D.O.B. September 25, 2010, App. No. 97994.

[4]C.L. eventually received a diagnosis of microcephaly, i.e., her head was not growing in pace with her body.

temporary custody of her to the agency.  The transcript reflects that at that

point, an exchange took place between the court and M.H. that reads in part

as follows:

> THE COURT: * * * Mom? [M.H.], I need you to take a deep breath and listen to what I'm saying.
>
> [M.H.]: No.  I did all that work for nothing.  I knew this was going to happen again.  I knew it.  Everybody in this room lied on me except for my lawyer.   Everybody lied on me.
>
> * * *
>
> THE COURT: Mom.  I'm not going to have an argument with you.
>
> [M.H.]: And plus, you lied to me too.
>
> * * *
>
> THE COURT: * * * Why are you so concerned [about the agency's temporary custody]? * * *
>
> [M.H.]: Because I want to know why I can't have my daughter.
>
> THE COURT: Because your psychiatrist has indicated there may be a need to modify your medication.
>
> [M.H.]: You can even ask my mother.  I've never been on medication even as a child.
>
> THE COURT: I'm not here about that.  Your psychiatrist says * * *
>
> [M.H.]: My psychiatrist is wrong. * * *

{¶11} In April 2011, the agency filed motions with respect to all three of the children, seeking an award of permanent custody. The juvenile court conducted the hearing in January 2012. When the hearing concluded, the court granted the agency's motions in all three cases.

{¶12} M.H. appeals from the juvenile court's decisions and presents four assignments of error. Because the first three assignments of error concern evidentiary issues, they will be addressed together, as follows.

"**I. The trial court committed prejudicial error and denied Appellant her right of confrontation and due process of law by admitting rank hearsay testimony in violation of *Evid.R. 802*.**

"**II. The trial court committed plain error by allowing the guardian ad litem to use leading questions to elicit opinion evidence from the [agency] case worker that was well beyond the case worker's alleged area of expertise.**

"**III. The trial court committed reversible error by admitting unsworn testimony of the guardian ad litem for the child[ren]."**

{¶13} M.H. challenges the juvenile court's decisions to admit certain evidence at the dispositional hearing. A trial court has broad discretion in admitting or excluding evidence, however, and absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. *In re J.T.*, 8th Dist.

Nos. 93240 and 93241, 2009-Ohio-6224, ¶ 67, citing *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985).

**{¶14}** In addition, a juvenile court may conduct a dispositional hearing in an informal manner. *Fleming v. Cuyahoga Cty. Dept. of Children & Fam. Servs.*, 8th Dist. No. 63911, 1993 Ohio App. LEXIS 3648 (July 23, 1993), citing R.C. 2151.353(A) and Juv.R. 27. By law, the juvenile court is permitted to "admit any evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." R.C. 2151.35(B)(2)(b); Juv.R. 34(B)(2). Nevertheless, except as prescribed by Juv.R. 34(B) and R.C. 2151.35(B)(2)(b), the rules of evidence apply to juvenile proceedings. *Fleming.*

**{¶15}** First, M.H. argues the juvenile court violated her due process rights by permitting Worthy to testify in some detail about the reports she received about M.H.'s behavior from the other service providers involved in the case plan. The children's GAL asked the questions; M.H. asserts the testimony was "rank hearsay."

**{¶16}** Despite the provisions of Juv.R. 34(B)(2) and R.C. 2151.35(B)(2)(b), M.H. apparently seeks to have this court adopt the position of other appellate districts that have held that hearsay is inadmissible in dispositional hearings at which the issue of parental rights is determined.

*See, e.g., In re Vickers Children*, 14 Ohio App.3d 201, 206, 470 N.E.2d 438 (12th Dist.1983); *In re Lucas*, 29 Ohio App.3d 165, 504 N.E.2d 472 (3d Dist.1985). This court recently impliedly adopted this position, but without mentioning either *Fleming*, R.C. 2151.35(B)(2)(b), or Juv.R. 34(B). *See In re J.T.*, 8th Dist. Nos. 93240 and 93241, 2009-Ohio-6224, ¶ 70.

{¶17} In that same decision, however, this court noted that the judge is presumed to be able to disregard improper testimony. *Id.* Therefore, *In re J.T.* set forth the additional proposition of law adopted by the other appellate districts, viz., the admission of hearsay in termination of parental rights cases, even if error, is not prejudicial unless it is shown that such evidence was relied on by the judge in making his decision. *Id.*, citing *In re Lucas* and *In re Vickers Children.*

{¶18} Regardless, in this case, the juvenile court had already obtained information about M.H.'s participation in the services offered under the case plan during Worthy's direct examination. *In re Z.T.*, 8th Dist. No. 88009, 2007-Ohio-827, ¶ 20. Because Worthy oversaw the case plan, the GAL wanted to elicit further detail; this does not establish that either that the juvenile court erred in allowing Worthy to answer or that the juvenile court relied upon improper evidence. *Id.*, ¶ 72.

**{¶19}** M.H. next argues the juvenile court acted improperly in permitting the children's GAL to ask leading questions to elicit "opinion testimony" from Worthy that Worthy was unqualified to provide. Third, M.H. argues that the juvenile court acted improperly in permitting the GAL to "testify" without having taken an oath. M.H. asserts the juvenile court committed plain error in these two respects.

**{¶20}** In explaining the meaning of plain error in the civil context, the Ohio Supreme Court has stated that reviewing courts must proceed with the utmost caution. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The doctrine is limited strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a materially adverse effect on the character of, and public confidence in, judicial proceedings. *Id.*

**{¶21}** A review of the challenged questions by the GAL of Worthy demonstrates she was asking Worthy about her opinion as the case worker, not as a medical professional. Worthy simply indicated M.H. was much easier to work with when she was taking her psychiatric medications; M.H.'s behavior clearly changed when she was noncompliant. Because Worthy's opinions were "rationally based on [her] perception" and were "helpful to a

clear understanding of [her] testimony" and "the determination of a fact in issue," they were admissible pursuant to Evid.R. 701.

{¶22} M.H. also complains that the juvenile court permitted the GAL to "testify" without having first administered an oath. In *Fleming*, 8th Dist. No. 63911, 1993 Ohio App. LEXIS 3648 (July 23, 1993), this court stated that Evid.R. 603 "contemplates the use of sworn testimony if any testimony is taken," even at dispositional hearings. *See also In re Ramsey*, 102 Ohio App.3d 168, 656 N.E.2d 1311 (5th Dist.1995).

{¶23} However, a review of the comments at the conclusion of the hearing indicates the GAL was not "testifying," but, instead, was orally supplementing her final report. This is permitted pursuant to Sup.R. 48(F)(1)(d).

{¶24} For the foregoing reasons, M.H.'s first, second, and third assignments of error are overruled.

{¶25} In her fourth assignment of error, M.H. states:

**"IV. The termination of Appellant's parental rights and the award of permanent custody to [the agency] was against the manifest weight of the evidence and constitutes a denial of due process of law."**

{¶26} In her fourth assignment of error, M.H. argues the juvenile court's decisions to award custody of her daughters to the agency are unsupported by the record. This court disagrees.

{¶27} In order to terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: 1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (d); and, 2) permanent custody is in the best interest of the child. The court must consider the five factors set forth in R.C. 2151.414(D) in making the latter determination.

{¶28} The relevant factors include the following: 1) the interaction and interrelationship of the child with others; 2) the wishes of the child; 3) the custodial history of the child; 4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and, 5) whether any of the factors in divisions (E)(7) to (11) apply. "Clear and convincing evidence" is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established. *In re: Y.V.*, 8th Dist. No. 96061, 2011-Ohio-2409, ¶ 13, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶29} The "best interest determination" focuses on the child, not the parent. *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th

Dist.1994). The discretion that the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *Id*., at 316.

**{¶30}** In this case, the juvenile court determined, pursuant to R.C. 2151.414(B), that the children had "been in the temporary custody of a public children services agency * * * for twelve or more months of a consecutive twenty-two month period." M.H. cannot dispute that this requirement was met.

**{¶31}** The juvenile court also found that "despite reasonable case planning and diligent efforts by the agency to assist" M.H. in remedying the problems that initially caused the children to be placed outside the home, M.H. had "failed continuously and repeatedly to substantially remedy the conditions that caused the children to be placed outside the home." R.C. 2151.414(B)(1).

**{¶32}** The evidence presented showed that, even by the date of the dispositional hearing, M.H. continued to demonstrate a contentious and entitled attitude, an unwillingness to accept the direction of others, an incapacity to stay focused on the children's welfare, and, in spite of

psychiatric medication, an inability to overcome her basic personality disorder. "R.C. 2151.414(E) requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time * * * once the court has determined * * * that one or more of the * * * factors exist." *In re William S.*, 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738 (1996); *see also In re T.G.*, 8th Dist. No. 90392, 2008-Ohio-2034, ¶ 42.

{¶33} Regarding the best interest of the children, the agency presented clear and convincing evidence that the children were together in the same foster home in which they originally had been placed, that they were happy, that their foster parents provided for all of their physical, emotional, and medical needs, that they had a strong bond with the foster family, and that the foster parents indicated a willingness to adopt all three.

{¶34} On the other hand, when in M.H.'s presence, the girls felt compelled to compete for her attention. M.H.'s eldest girl in particular demonstrated anxiety, and, in response to M.H.'s fickle attitude, automatically assumed a maternal responsibility toward her siblings. For these reasons, and because the children needed a legally secure placement, the children's GAL recommended permanent custody as being in their best interest.

{¶35} Because the "manifest weight" of clear and convincing evidence supports the juvenile court's decisions in these cases, M.H.'s fourth assignment of error also is overruled.

{¶36} The juvenile court's orders are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, P.J., and
MARY EILEEN KILBANE, J., CONCUR