[Cite as *In re N.P.*, 2012-Ohio-4298.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
Nos.   **97846, 97847, 97848, 97849, 97850,
97851, 97852, 97853, 97854 and 97855**

---

# IN RE: N.P., R.W., T.W. and E.W.
# Minor Children

# [Appeal by Merle P., Ricky W. and Rondaline W.]

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED
## IN PART, AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division

Case Nos. AD 08939556, AD 08939557,
AD 09920158, and AD 11902585

**BEFORE:**   E. Gallagher, J., Sweeney, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**     September 20, 2012

**ATTORNEYS FOR APPELLANT**

**For Rondaline W.**

Dale M. Hartman
2195 South Green Road
University Heights, Ohio    44121

**For Ricky A. W.**

Betty C. Farley
17316 Dorchester Drive
Cleveland, Ohio    44119

**For Merle P.**

Jeffrey Froude
P. O. Box 771112
Lakewood, Ohio    44107

**ATTORNEYS FOR APPELLEE**

**For C.C.D.C.F.S.**

Cheryl Rice
Assistant County Prosecutor
C.C.D.C.F.S.
3955 Euclid Avenue
Cleveland, Ohio    44115

Gregory S. Millas
Assistant Prosecuting Attorney
C.C.D.C.F.S.
8111 Quincy Avenue, Rm. 444
Cleveland, Ohio    44104

**For Guardian Ad Litem**

Daniel Bartos
20220 Center Ridge Road
Suite 320
Rocky River, Ohio    44116

EILEEN A. GALLAGHER, J.:

{¶1} Appellants Merle P., Ricky W. and Rondaline W. appeal from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting permanent custody of N.P., R.W., E.W. and T.W. to the Cuyahoga County Department of Children and Family Services ("Department").[1] Through their consolidated appeals, appellants argue that the court's decision granting permanent custody to the Department was against the manifest weight of the evidence, that it was not in the best interest of the children, that the court failed to follow the mandates of Juv.R. 29 and that counsel for appellant Merle P. rendered ineffective assistance. For the following reasons, we affirm, in part, reverse, in part, and remand the matter for proceedings consistent with this opinion.

{¶2} This case involves four young girls: N.P., (d.o.b. November 16, 1998), R.W. (d.o.b. May 15, 2008), E.W. (d.o.b. October 11, 2009); and T.W. (d.o.b. January 5, 2011). The children's mother is appellant Rondaline W., appellant Merle P. is the children's maternal great-grandmother and appellant Ricky W. is the biological father of E.W., and T.W., and the legal father of R.W. N.P.'s father is a man by the name of Stuart Miller who, at the time of this appeal, failed to support, visit or communicate with his daughter since her birth. R.W.'s biological father is Gary Macon, though the

---

[1]The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.

Department referred to appellant Watson as R.W.'s legal father because he and Rondaline W. were married at the time of her birth.

{¶3} On October 22, 2008, the Department removed N.P. and R.W. from Rondaline W. and Ricky W.'s care. At the time of removal, Rondaline W. and Ricky W. had not supervised the children, they had not benefitted from parenting classes, Ricky W. had an admitted substance abuse problem with marijuana and Rondaline W. did not want her daughters returned to her care. Additionally, N.P. had been perpetrating sexual activity on her younger brother and had set fire to a bed in the family home. N.P.'s actions were the result of past sexual abuse by her maternal grandfather[2] for which she was to receive counseling. However, Rondaline W. continuously cancelled appointments with N.P.'s therapist.

{¶4} On January 6, 2009, the magistrate adjudged N.P. and R.W. dependent and committed the girls to the custody of the Department. At the time of the hearing, Rondaline W. agreed with the children's temporary placement with the Department. The trial court adopted the magistrate's decision on January 29, 2009. Subsequently, the Department moved to modify the order of temporary custody to permanent custody on July 16, 2009.

{¶5} While in the Department's custody, N.P. disclosed to her therapist, Peggy Haynes, that she had been sexually abused by her mother, her stepfather Ricky W. and

---

[2] *See* CR-483847, in which Darrell Green pleaded guilty to gross sexual imposition and abduction on July 17, 2007. The trial court classified Green as a sexually oriented offender and

her father's friend, Gary Macon. N.P. was very descriptive about oral, vaginal and anal sex with the two men. Additionally, N.P. disclosed that she had watched pornography with her mother. N.P. made these same disclosures to David R. Denholm, a therapist and coordinator of the secure treatment unit at the Berea Children's Home and Lauren McAliley, the Associate Director of the Center for Pediatric Ethics and a Pediatric Nurse Practitioner with Child Advocacy Protection at Rainbow Babies and Children's Hospital. N.P.'s disclosures to all three individuals were consistent, specific and detailed.

{¶6} Based on N.P.'s disclosures, Rondaline W., Ricky W. and Gary Macon were all indicted for various crimes and each were convicted of various charges relating to their abuse of N.P.[3]

{¶7} Rondaline W. gave birth to E.W. on October 11, 2009. E.W. was born prematurely with a club foot, range of motion problems with her upper and lower extremities and acid reflux, which affected her weight gain. A magistrate conducted an emergency custody hearing on October 30, 2009, at which time the parties agreed to the grant of emergency custody. The Department placed E.W. with Merle P., her maternal

---

sentenced him to three years in prison with five years of postrelease control.

[3] *See* CR-534303. The court found Rondaline W. guilty of two counts of endangering children and sentenced her to one year of community controlled sanctions. *See* CR-550133. A jury found Ricky W. guilty of two counts of rape with sexually violent predator specifications, two counts of kidnapping with sexual motivation specifications, two counts of disseminating matter harmful to juveniles and two counts of endangering children. The trial court sentenced Ricky W. to 25 years to life on April 4, 2012. *See* CR-534303. The court found Gary guilty of one count each of rape of a child under 13 years old, gross sexual imposition and kidnapping. The court sentenced Gary to mandatory life in prison without the

great-grandmother. At that time, the magistrate ordered Merle P. to supervise all interaction between E.W. and her parents and specifically instructed Merle P. that the child was not to be left unsupervised with her parents.

{¶8} On February 23, 2010, Merle P. filed a motion for legal custody of N.P., R.W., and E.W. and the trial court made her a party to each of the children's cases. Even though she wanted custody of each of the children, Merle P. admitted that she did not believe the allegations of sex abuse that N.P. had made against her mother and stepfather and testified on behalf of Rondaline W. at her criminal trial. Also, Merle P. facilitated contact between N.P. and her mother, in violation of the trial court's no-contact order.

{¶9} On August 16, 2010, the trial court held an adjudicatory hearing and found E.W. to be a dependent child. At the hearing, Rondaline W. testified that she had been diagnosed with post-traumatic stress disorder and borderline personality disorder and that her two older children, N.P. and R.W., had previously been removed from her care and that her son was in the permanent custody of his father. Rondaline W. admitted that she had a history of unsanitary housing and that she had demonstrated a lack of parenting skills with regard to her older two daughters.

{¶10} E.W. remained in the care of her maternal great-grandmother until February 2011. At that time, the Department claimed that Merle P. violated the court's no-contact order by leaving E.W. unsupervised with her father. Merle P. later testified

possibility of parole.

that she was left in an unwinnable position. Specifically, Merle P. was called to testify in Rondaline W.'s criminal trial one day earlier than originally planned, the Department had failed up until that point to provide Merle P. with respite care, Merle P. was not permitted to bring E.W. into the courtroom while she testified and the trial court judge ordered Merle P. to leave E.W. in the hall, where she remained with court security, assistant county prosecutors and Ricky W..

{¶11} Notwithstanding this issue, the Department cited to other issues concerning Merle P.'s care of E.W. in that she repeatedly missed E.W.'s neurological and genetic appointments. Additionally, Merle P. admitted that even though the Department had removed E.W. from her care, she continued to receive and accept social security benefits for that child.

{¶12} Rondaline W. gave birth to T.W. on January 5, 2011. Initially, the Department did not know Rondaline W. had given birth to another baby. When they were informed, social workers responded to Rondaline W.'s and Ricky W.'s residence. Rondaline W. eventually admitted to social workers that she had birthed another child and that the baby was staying with a friend down the street. Social workers removed T.W. from her parents' care and filed a complaint on February 14, 2011, alleging dependency with a prayer for permanent custody.

{¶13} On April 15, 2011, Rondaline W. and Ricky W. admitted to an amended complaint and the court adjudicated T.W. as a dependent child. At the hearing, Rondaline W. admitted that she was convicted of two counts of child endangering

relating to her conduct with her eldest daughter, N.P., and that she was to have no contact with this child. Ricky W. admitted that he was awaiting trial on charges of rape, kidnapping and disseminating matter harmful to juveniles relating to his conduct with his stepdaughter, N.P. Additionally, Ricky W. stated that he did not comply with the Department's request for random drug screens. Merle P. again moved for legal custody of the youngest child and completed a statement of understanding for legal custody on April 15, 2011.

{¶14} The Department presented evidence that since their removal, N.P., R.W. and T.W. have all been placed in the same foster home. N.P.'s aggressive and sexualized behavior have improved and she also saw an improvement in her grades at school. E.W. no longer has any physical or medical conditions requiring special services and although she is in a different foster home than her sisters, the foster family is willing to take her in as well.

{¶15} The Department also presented evidence that since 2008, Rondaline W. and Ricky W. have failed to remedy the conditions that caused the removal of the four children. The Watson's problem with maintaining a hygienic environment for the children was ongoing, Ricky W. failed to complete a drug assessment and comply with random drug tests, Rondaline W. failed to complete the mental health component of the case plan and failed to consistently attend counseling. While Ricky W. and Rondaline W. attended a support group for parents, they failed to complete the more hands-on program recommended by their social workers. Lastly, Rondaline W., Ricky W. and

Gary Macon all were convicted for their various forms of sexually-related abuse of N.P.

{¶16} The court consolidated the four children's cases and conducted the hearing for permanent custody over several days. The court heard numerous days of the testimony and evidence outlined above. Additionally, the guardian ad litem issued a report recommending that the court grant permanent custody of all the children to the Department. After reviewing the foregoing, the trial court denied Merle P.'s motion for legal custody and ordered that the children be committed to the permanent custody of the Department. The court then severed the parental rights of Rondaline W. as they related to all four children, Ricky W. as they related to N.P., E.W., and T.W. and Gary Macon, as they related to R.W.

{¶17} Rondaline W., Ricky W. and Merle P. all filed separate appeals, which this court consolidated. While the court severed the parental rights of Rondaline W., Ricky W. and Gary Macon, the court did not sever the rights of Stuart Miller, N.P.'s father. We note that the Department attempted to involve Mr. Miller in the proceedings, even providing service to all last-known addresses and through publication. However, the court's failure to sever his parental rights as they related to N.P. constitutes an error that must be corrected on remand.

{¶18} In appellant Merle P.'s first assignment of error, she argues that the trial court's decision to not award her legal custody of the four children was against the manifest weight of the evidence. In appellant Ricky W.'s first and second assignments of error, he argues that the Department failed to show both that the grant of permanent

custody of E.W. and T.W. was in the children's best interest and that Rondaline W. had not remedied the conditions that caused the removal of the children from the home. Lastly, in appellant Rondaline W.'s first assignment of error, she argues that the grant of permanent custody of the four children was against the manifest weight of the evidence. Because these assigned errors involve the same standard of review and apply the same facts, this court shall address them contemporaneously.

<u>Grant of Permanent Custody of E.W. and T.W.</u>
<u>Pursuant to an Original Complaint</u>

**{¶19}** Before a trial court may terminate parental rights pursuant to an original complaint, it must find by clear and convincing evidence that: (1) it is in the best interest of the child to be placed in the permanent custody of the moving agency, based on an analysis under R.C. 2151.414(D), and (2) that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E). Appellants claim the trial court's decision is against the manifest weight of the evidence. In applying the manifest weight standard of review, our role is to determine whether there is relevant, competent and credible evidence upon which a fact finder could base its judgment. *In re Laigle/King Children*, 5th Dist. No. 2001CA00145, 2001 Ohio App. LEXIS 3692 (Aug. 13, 2001); *Cross Truck v. Jeffries*, 5th Dist. No. CA-5758, 1982 Ohio App. LEXIS 15233 (Feb. 10, 1982). Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *In re P.R.,* 8th Dist. No. 76909, 2002-Ohio-2029. It

is based upon this standard that we review the appellants' various assigned errors. R.C. 2151.414(D)(1) provides as follows:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶20} Although a trial court is required to consider each of the factors quoted above in making its permanent custody determination, this Court has noted that "[o]nly one of these factors needs to be resolved in favor of the award of permanent custody." *In re Moore*, 8th Dist. No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000).

{¶21} In making its decision, the trial court in this case specifically considered all of the above factors. It found that while E.W. and T.W. were too young to express their wishes, the guardian ad litem appointed on their behalf recommended permanent custody as being in the children's best interest. Further, the court noted the custodial history of the two children. The court then recited the failure on the part of Rondaline W. and Ricky W. to complete and follow through with services provided by the Department, their failure to remedy the conditions precipitating the children's removal, their failure to complete assessments and evaluations and their lack of commitment to the children. The court then determined that no relatives were able to provide suitable care to E.W. and T.W., and that the children's need for legally secure placement could not be achieved without the grant of permanent custody. Based on the foregoing, the court determined that it was in the best interest of E.W. and T.W. that permanent custody to CCDCFS be granted.

{¶22} The trial court's findings are supported by the record. We, therefore, find that the court's determination that permanent custody is in the best interests of E.W. and T.W., is supported by competent, credible evidence.

{¶23} Next, we determine whether the court's finding that E.W. and T.W. cannot be placed with a parent within a reasonable time or should not be placed with a parent, is equally supported by competent, credible evidence.

{¶24} R.C. 2151.414(E)(1)-(16) provides a list of conditions, the existence of any one of which, requires a court to conclude that the child cannot be placed with the

child's parents. In the present case, the trial court concluded that the following subsections apply:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶25} The evidence in the record supports the trial court's conclusions. In making its determination that R.C. 2151.414(E)(1) applied, the court found as follows:

The Court finds that the Cuyahoga County Department of Children and Family Services has made reasonable efforts to prevent the removal of the child, to eliminate the continued removal of the child from her home, or to make it possible for the child to return home. Relevant services provided to the family and the reasons those services were not successful: 1) mother failed to follow through with recommendations from Mental Health Assessment, 2) mother failed to benefit from parenting and mental health counseling, 3) mother and father, Ricky * * * had a parent aide in the home to assist with their personal hygiene and maintenance of the home, but failed to benefit from the services, 4) mother and father, Ricky * * *, have exhibited a lack of commitment to the children by failing to consistently visit with them, 5) father, Ricky * * *, failed to complete a psychological evaluation and failed to benefit from parenting education, 6) father, Ricky * * *, repeatedly failed to participate in recommended outpatient substance abuse treatment.

{¶26} The court's findings were supported by the testimony of Department social workers. Additionally, the trial court heard testimony concerning Rondaline W.'s conviction of two counts of felony child endangering and, that at the time of the disposition, Ricky W. was awaiting trial on charges of rape, kidnapping and disseminating matter harmful to juveniles. Although the parties argue that the grant of permanent custody is not in the best interest of the children and is against the manifest weight of the evidence, no party has pointed to any error in the trial court's statutory proceedings.

{¶27} Based on the foregoing, we that find competent, credible evidence supports the trial court's conclusion that E.W. and T.W. could not, and should not, be placed with either parent. Accordingly, the trial court's grant of permanent custody was not against the manifest weight of the evidence.

<u>Grant of Permanent Custody of N.P. and R.W.</u>

Pursuant to a Motion for Permanent Custody

{¶28}    When proceeding on a motion for permanent custody, the trial court must satisfy two statutory requirements before issuing such an order.   First, the court must find by clear and convincing evidence of the existence of at least one of the four conditions set forth under R.C. 2151.414(B)(1):

(B) (1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the

temporary custody of an equivalent agency in another state.

{¶29} In the case of N.P. and R.W., the court determined that R.C. 2151.414(B)(1)(d) applied:

> The child is not abandoned or orphaned; the child has been in the temporary custody of a public children services agency or private child placing agency for twelve or more months of a consecutive twenty-two month period. Therefore, it is in the best interest of the child to be placed in the permanent custody of the Cuyahoga County Department of Children and Family Services.

{¶30} The court's conclusion is supported by competent evidence in the record. Specifically, the Department presented evidence that at the time of the hearing, N.P. and R.W. had been in the agency's custody for 2 years, 11 months and 21 days.

{¶31} Next, we must determine whether the court's finding that granting permanent custody of N.P. and R.W. to the Department pursuant to R.C. 2151.414(D)(1)(a)-(e) is equally supported by competent, credible evidence.

{¶32} In granting permanent custody to the Department, the court considered each of the factors on R.C. 2151.414(D)(1)(a)-(e) and found as follows:

> Upon considering the interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents; the wishes of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period; the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and, the report of the Guardian Ad Litem, the court finds by clear and convincing evidence that a grant of permanent custody is in the beset interests of the child and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

{¶33} The court noted that Rondaline W. and Ricky W. failed to remedy the problems precipitating the removal of N.P. and R.W., that the parents committed an abuse against N.P., that the parents demonstrated a lack of commitment toward N.P. and R.W., and, that Rondaline W. was convicted of two counts of endangering children and Gary Macon was convicted of rape and received a life sentence at Lorain Correctional Institution.

{¶34} The trial court's findings are supported by the record. We, therefore, find the court's determination that permanent custody is in the best interests of N.P. and R.W. is supported by competent, credible evidence.

{¶35} Based on the foregoing, we overrule Merle P.'s first assignment of error, overrule Ricky W.'s first and second assignments of error, and overrule Rondaline W.'s first assignment of error. While we find the court's judgment to be supported by competent, credible evidence and supported by the manifest weight of the evidence, as it relates to the parental rights of Stuart Miller, only, we find that the court committed error. As such, we remand this cause to the trial court for disposition of Stuart Miller's parental rights.

{¶36} In her second and final assignment of error, appellant Merle P. argues that her counsel rendered ineffective assistance when counsel failed to move the court for legal custody of each of the four children. We disagree.

{¶37} "The established test for ineffective assistance of counsel used in criminal

cases is equally applicable to actions seeking to force the permanent termination of parental rights." *In re C.M.*, 9th Dist. Nos. 23606, 23608, and 23629, 2007-Ohio-3999, at ¶ 27, citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998). This two-part test requires a demonstration that counsel's performance fell below an objective standard of reasonable representation and that the client has suffered prejudice. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. *See also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Proof of both parts of the test is necessary to establish the claim. *Bradley*, 42 Ohio St.3d at 142. In applying the test, the reviewing court should recognize that counsel is strongly presumed to have rendered adequate assistance. *Id*.

{¶38} The basis for this assigned error is Merle P.'s assertion that her trial counsel failed to move for legal custody of all four children. A review of the record of each children's case reveals otherwise. On February 23, 2010, Merle P.'s attorney filed a motion for legal custody of N.P., R.W. and E.W. The trial court considered these motions and on December 21, 2011, denied each one. Merle P. is correct when she states that her trial counsel failed to file a motion for legal custody of T.W. Nonetheless, Merle P. did file a statement of understanding for legal custody with the court and the trial judge made Merle P. a party in T.W.'s case. The trial court acknowledged that because Merle P. and her counsel failed to file a motion for legal custody, it would not consider Merle P.'s claim. Notwithstanding the foregoing, the court noted in its decision terminating the parental rights of Rondaline W. and Ricky W.,

that "the child cannot be placed with relatives for the following reason: No relatives are able to provide suitable care."

{¶39} Even if this court were to conclude that the failure of Merle P.'s counsel to move for legal custody in the case of T.W. constituted deficient performance, Merle P. cannot demonstrate to this court that she suffered any prejudice. Specifically, it is clear from the record that the court considered Merle P. as a possible placement for T.W. but ultimately, found her to be not suitable. Thus, we cannot conclude that Merle P.'s trial counsel rendered ineffective assistance.

{¶40} Merle P.'s second and final assignment of error is overruled.

{¶41} In her second and final assignment of error, appellant Rondaline W. argues the trial court erred when it failed to follow the mandates of Juv.R. 29 during the adjudicatory hearings for both E.W. and T.W. This assignment of error lacks merit.

{¶42} In this assigned error, Rondaline W. makes a number of assertions regarding the admissions that were made regarding E.W. and T.W.'s adjudication. First, Rondaline W. argues that the court erred during E.W.'s adjudication by not advising her that by stipulating to the amended allegations in the complaint that she was waiving her right to remain silent, by failing to inform her of the possible consequences and by failing to determine if notice requirements were met. Rondaline W. also contends that the court erred by permitting Ricky W. to admit to the amended complaint through counsel.

{¶43} However, neither Rondaline W. nor Ricky W. raised any of these

arguments in the trial court. As such, they have waived all but plain error. *State v. McCollins*, 8th Dist. No. 95486, 2011-Ohio-2398. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. *Id.*; *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Moreover, on appeal, Rondaline W. has failed to argue that plain error exists. An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). *State v. Martin,* 12th App. No. CA99-01-003, 1999 Ohio App. LEXIS 3266 (July 19, 1999), citing *Meerhoff v. Huntington Mtge. Co.*, 103 Ohio App.3d 164, 658 N.E.2d 1109 (3d Dist.1995); *Siemientkowshi v. State Farm Ins.,* 8th Dist. No. 85323, 2005-Ohio-4295. "If an argument exists that can support this assigned error, it is not this court's duty to root it out." *Cardone v. Cardone*, 9th Dist. Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028 (May 6, 1998).

**{¶44}** Accordingly, we disregard Rondaline W.'s final assignment of error.

**{¶45}** Based on the foregoing, we affirm the decision of the trial court in part, and remand the matter for proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

EILEEN A. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., and
SEAN C. GALLAGHER, J., CONCUR

**Appendix**

**Assignments of Error, Appeal Nos. 97847, 97849, 97852 and 97855:**

"**I. The trial court erred in finding no suitable relatives were available against the manifest weight of the evidence.**

**II. The assigned counsel for maternal great grandmother was ineffective and therefore the rights under Sixth Amendment of the United States Constitution of this party have been violated.**"

**Assignments of Error, Appeal Nos. 97851 and 97854:**

"**I. The Cuyahoga County Department of Children and Family Services failed to show by clear and convincing evidence that permanent custody is in the minor children's best interests.**

**II. The Cuyahoga County Department of Children and Family Services failed to show by clear and convincing evidence that the mother of the children, Rondaline W., had not remedied the conditions which caused the removal of the children from the home.**"

**Assignments of Error, Appeal Nos. 97846, 97848, 97850 and 97853:**

"**I. The trial court erred in granting permanent custody since (1) none of the circumstances set forth in R.C. 2151.414(E) were proven by clear and convincing evidence and (2) the judgment is against the manifest weight of the evidence.**

**II. The court erred during the adjudicatory hearing by failing to follow the mandates of Juv.R. 29.**"